STEVENS (GIBSON v.). See Case No. 5,401.

## Case No. 13,398.

### STEVENS et al. v. GILL et al.

[1 Morr. Min. Rep. 576.]

Circuit Court, D. Colorado. Oct. 25, 1879.

MINES AND MINING—"LODE" OR "VEIN" DEFINED—"IN PLACE" DEFINED.

[1. Where a lode or vein exists in defendant's claim, and the line of contact between the porphyry and lime rock extends some distance into an adjoining claim owned by plaintiff, the question whether the apex of such lode is in plaintiff's claim, so as to entitle him to follow it downward into defendant's claim, is to be determined by finding whether, in the part lying in plaintiff's claim, there is something of value,—not of economical value for treatment, but something ascertainable, something beyond a mere trace which can be positively and certainly verified as existing in the ore. In the case of silver, such value must be reckoned by ounces, one or more, in the ton of ore; and if that amount is shown, it is enough, other conditions being satisfied, to establish the existence of a lode.]

[Cited in Shreve v. Copper Bell Min. Co. (Mont.) 28 Pac. 320.]

[2. Whether or not that which is commonly called "the contact" is to be regarded as a lode or vein, is to be judged of by its value, whatever may be the rule in regard to true fissures; and it is immaterial whether the material found is or is not sometimes or often associated with valuable ore in the deposits of the neighborhood.]

[3. "In place," as used in the act of congress in respect to veins or lodes, means in the general mass of the mountain, as distinguished from merely on the surface or covered only by the movable parts called "slide" or "debris."]

[This was an action at law by William H. Stevens and others against Andrew W. Gill and others to determine conflicting claims to mining property.]

G. G. Symes, W. S. Decker, J. Y. Marshall, and C. S. Thomas, for plaintiffs.

Hugh Braler, E. O. Wolcott, Hiram P. Bennett, and T. M. Patterson, for defendants.

HALLETT, District Judge (charging jury). Having heard the counsel, you ought now to be prepared to decide the questions in controversy between these parties. There is some difficulty upon the pleadings here in determining precisely what extent of ground is in controversy between the parties. The plaintiffs claim, by their declaration or complaint, the ground which is within the line of the first incline on the Bull's Eye lode,—that is to say, they claim that the defendants have ousted them from that portion of the lode which lies within the Silver Wave location. Further on, as you have heard from the evidence, the defendants, or some of them, are in the occupation of the same claim by more extensive workings. That point is called the "main incline" on the Silver Wave lode; and there, as I think, Mr. Doyle told you, in his evidence, the workings of the defendants are quite extensive. It is a little extraordinary that the action should be brought for a small portion only of a claim, if the plaintiffs do, in fact, claim the whole of it; and I am a little at a loss to determine, from the pleadings or from the statements of counsel, what the extent of their damage is in respect to the Silver Wave claim. I think, however, we ought not to be governed precisely by the statement in the complaint as to their location. If you find for the plaintiffs, you ought to find some part or portion of the northern end of that claim as belonging to them, so that the precise matters as adjudged between them may be determined. That is to say, you ought to find a certain number of feet, extending from the north end of the claim, as their property, without adhering precisely to the points stated in the complaint. You will remember I asked, at the close of the testimony, some of the witnesses to give the distance from the north end of the claim to the first and second incline, and to the shaft on the Bull's Eye claim opposite the main incline on the Silver Wave workings. These distances were given: To the first incline, 45 feet; to the second incline, 135 feet; and to the shaft opposite the Silver Wave workings, 250 feet. Probably the theory of the plaintiffs is that somewhere, at a point between the second incline of the Bull's Eye and the main incline of the Silver Wave, or at the shaft opposite that incline, the lode passes from their ground into that of the defendants; and, as I said before, if you find for the plaintiffs, I think you ought to determine with some degree of certainty what that point is.

Now, you have observed, in general, that the parties here have no controversy as to the surface of the ground. The defendants' location lies parallel with and alongside the plaintiffs' location, and immediately east of it. So far as the ground in dispute is concerned, there is no conflict on the surface, but the plaintiffs claim the right to pursue the lode, which they say they have in their own territory, out of their territory and into that of the defendants. Upon that the principal question relates to the top and apex of the lode, as to whether it is within the plaintiffs' location or in that of the defendants', and as that is the principal point in the case, I have written what I wish to say to you upon that subject as follows:

Upon the evidence before you it may be assumed that there is a lode in the Silver Wave location, and the principal question for your

consideration is to determine the situation of the top and apex of that lode with reference to the two locations. You have observed that the claims are continuous and parallel to each other, the defendants' claim lying immediately east of that owned by the plaintiffs. The act of congress provides that one who locates and acquires title to a vein may follow it to any depth within the end lines of his location, although in its downward course it may enter the land adjoining. And so, also, as to all other veins having their tops within the surface lines of the location extended downward vertically. So that it is often a question whether the top and apex of the lode is in one place or another, as the matter of ownership may turn on that point. And that is the main question in this case, for, if the plaintiffs hold the top and apex of the lode in their ground, they may, by the express language of the act of congress before mentioned, follow it from their own territory into that owned by defendants. That proposition may be stated in other language, as, whether the lode is to be found in plaintiffs' ground, and thence extending eastward into defendants' ground, or in defendants' ground only. On that general subject, you have observed that the witnesses concur in saying that the line of contact between the porphyry and lime rock extends more or less definitely into plaintiffs' territory for a distance of about 100 feet. They are not agreed whether the porphyry rock overlying the lime is in massive condition, or in the condition of slide or debris on the surface of the mountain. Nor are they agreed whether the material found between the lime and porphyry is of the country rock or vein matter, and whether it is of value.

It will serve our purpose to put out of view for the moment those points relating to this line of contact in which the witnesses are not agreed, and consider whether, upon the assumption that the line of contact between porphyry and lime extends from plaintiffs' ground into that of defendants', without more; that is to say, without anything of value therein, so far as it is found in plaintiffs' ground, it may be regarded as a lode or vein, within the meaning of the act of congress. And that is easily answered in the negative. For, whatever may be said of true fissures, it must be conceded that the joinder or union of rocks differing in character, or of the same character, is not in itself a lode or vein. And if, in some space between such rocks, there is found a material which sometimes or frequently exists with the valuable ore in lodes, the case is not different. As to all such contacts and all such deposits as are found in the neighborhood of Leadville, a lode cannot exist without valuable ore. But, if there is value, the form in which it appears is of no importance, whether it be iron or manganese, carbonate of lead, or something else yielding silver, the result is the same. The law will not distinguish between different kinds and classes of ore, if they have appreciable value in the metal for which the location was made. Nor is it necessary that the ore shall be of economical value for treatment. It is enough if it is something ascertainable, something beyond a mere trace, which can be positively and certainly verified as existing in the ore. In the case of silver ore the value must be reckoned by ounces, one or more in the ton of ore, and if it comes to that it is enough, other conditions being satisfied, to establish the existence of a lode.

If, therefore, you find, from the evidence, that there is a line of contact between porphyry and lime in plaintiffs' ground, extending thence into defendants' ground, and in some space on that line there is a material differing from the enclosing rocks, by whatever name that material may be called, in respect to whether it is a lode or vein, it shall be judged according to its value. And this is true whether the material so found is or is not such as is sometimes or often associated with valuable ore in the deposits in the neighborhood of Leadville, whatever the rule may be as to true fissures what is commonly called "the contact" is not, in the absence of valuable ore, to be regarded as a lode or vein. Nothing will be said in this connection as to what rule shall be applied in the case of interruptions in the ore body, or barren spaces in the contact, when it has been proven to be of value to some extent from the surface. Because, upon the evidence before you, whatever your conclusion may be as to the value of the material in "the contact," you will probably find it to be continuous from a point a little below the surface in the first incline down to that place in defendants' ground from which valuable ore was taken. If, then, you say that the material in what the witnesses call "the contact" throughout plaintiffs' ground is not of appreciable value in silver, within the rule already given, there is no lode or vein in that place, and the law is with the defendants. On that point, however, the evidence is contradictory. And if, on the other hand, you find from the evidence that the material is of value, and that it is continuous from plaintiffs' ground into that owned by defendants, a further question will arise as to whether it is "in place." The act of congress speaks of veins or lodes "in place," by which, according to our interpretation, it is required that the vein or lode shall be in the general mass of the mountain. It may not be on the surface, or covered only by the movable parts called "slide" or "debris." But if it is in the general mass of the mountain, although the enclosing rocks may have sustained fracture and dislocation in the general movement of the country, it is "in place." In this instance, it is claimed by defendants that the porphyry overlying the lime is not in place anywhere in plaintiffs' ground, and, if that be true, it cannot be said that the lode is in place, if one exists there. The distinction to be made is whether the porphyry in plaintiffs' ground is part of the general slide and debris of the mountain, or stands in its

original position in the structure of that formation. It is enough if it is found in place at any point west of plaintiffs' east line, for, in this instance, the lode, if there is one, must come into place with the overlying rock. Upon this explanation, if you are able to say, on the evidence, that there is a lode, and that it is in place in plaintiffs' ground, and that it descends thence into defendants' ground, your verdict should be for the plaintiffs. If there is no lode, or it is not in place in plaintiffs' ground, your verdict should be for the defendants.

So much, gentlemen, as to the principal points. I should have said to you before that, as to the ground claimed by the defendants and plaintiffs you may, upon the paper title given in evidence, and upon the proof of occupation given by each of the parties, assume that they are the owners of their respective claims, and that each is entitled to the ground in his own location, subject to the qualification I have stated.

As to the weight of evidence and the burden of proof, I have been asked to say to you, and I say accordingly, that it is upon the plaintiffs. It is upon them because they are the plaintiffs in the action, and they are required to prove their right of action as against the defendants; and, also, because, in cases of this kind, where one party seeks to go out of his own territory into that claimed by another, the burden is upon him to show his right to do so,—that is to say, he must prove by a preponderance of testimony that he has a lode within his own territory, and that he has the top or apex of it, in order to go out of his own territory, in pursuit of that lode. He cannot, otherwise, claim the right to enter ground, or enter upon the possession of it not within his own location. So that, upon that, the burden is upon the plaintiffs to show to you by preponderance of testimony, if I may so express it, that they have the lode within their own ground, according to the definition which I have given you, and that it proceeds from thence into the ground claimed by the defendants.

A further question, if you find for the plaintiffs, as to the damages to which they are entitled: They have claimed in their complaint and they are entitled to recover if they own the lode, for the ore removed by the defendants in this first incline. You remember what the testimony was upon that subject. You remember the statements made by Mr. Doyle, and about his statement as to the value of the ore removed by the defendants from that incline; and if the plaintiffs are entitled to that ground, they are entitled also to recover the value of that ore.

I do not think of anything more, gentlemen, which it may be important to say to you. The principal question for your consideration is contained in this writing which I will hand to you, and you may take with you to your room.

See note to Stevens v. Williams [Case No. 13,413].